**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN (GRAND RAPIDS)**

IN THE MATTER OF:

NJ Realty, LLC,

                    Debtor.

                              /

Bankruptcy Case No. 19-04266-swd
Honorable Scott W. Dales
Chapter 11

## TRUSTEE'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES WITH LIENS, INTERESTS AND ENCUMBRANCES ATTACHING TO THE PROCEEDS OF SALE  PURSUANT TO 11 U.S.C.  §363 (b) and §363(f) AND TO PAY BROKER'S COMMISSION AND CLOSING COSTS

Trustee, Kelly M. Hagan ("Trustee"), by and through her counsel, Beadle Smith, PLC, and hereby states for Trustee's Motion for Authority to Sell Real Property Free and Clear of All Liens, Interests and Encumbrances with Liens, Interests and Encumbrances Attaching to the Proceeds of Sale pursuant to 11 U.S.C. §363 (b) and §363(f)  and to Pay Broker's Commission and Closing Costs ("Motion") as follows:

1.      On October 8, 2019, NJ Realty, LLC ("Debtor") herein  filed a Voluntary Petition under Chapter 11 of the Bankruptcy Reform Act of 1978, as Amended, Title 11 ("Petition Date").

2.      Subsequent to the aforementioned filing, Kelly M. Hagan was appointed the duly qualified and acting Chapter 11Trustee in this matter.

3.      Among the assets of this estate is real estate located in the City of Scottsdale, County of Maricopa, State of Arizona to-wit:

Unit 101 of McDowell Mountain Business Park I Condominiums, together with the undivided interest in and to the common elements appurtenant to said unit; all set forth in the Amended and Restated Condominium Declaration recorded June 15, 2004 at recorders No. 2004-0672810, and on Plat recorded in the office of the Maricopa County Recorder in Book 612 of Maps, Page 36 ("Property").

4.      The Trustee seeks approval to sell the Property free and clear of all liens, interests and encumbrances with liens and encumbrances attaching to the proceeds of the sale for the benefit of this bankruptcy estate pursuant to 11 U.S.C. §363(b) and (f).

1

5.    The Property is encumbered by a Deed of Trust granted in favor of Commonwealth Land Title Insurance Company for the benefit of KeyBank National Association dated July 19, 2019 securing obligations in the approximate amount of $1,500,000.00 ("Deed of Trust"). The Deed of Trust is in dispute and is subject to an adversary proceeding being prosecuted by the Trustee, being Adversary Proceeding 19-80119-swd ("Adversary Proceeding"). The Adversary Proceeding asserts that the Deed of Trust should be voided on various grounds including 11 U.S.C. §547 and §548. The Granting of the Deed of Trust was done within the 90 days of the Petition Date to secure obligations of separate entities referred to as the Interlogic Borrowers.

6.    The Property is also encumbered by real estate taxes owed to Maricopa County, Arizona in the amount of approximately $7,008.55 which shall be paid at closing.

7.    11 U.S.C. §363(f) permits the sale of the Property by the Trustee free and clear of all interests if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) the entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) its interest is in bonafide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.   11 U.S.C. §363(f).

8.    KeyBank consents to the sale set forth in this Motion satisfying 11 U.S.C. §363(f)(2). In addition, the Deed of Trust is in a bonafide dispute as set forth in the Adversary which satisfies §363(f)(4).

9.    The secured claims of Maricopa County and any unpaid condominium dues/assessments will be paid in full at closing.

10.    The Trustee has hired Colliers International ("Broker"), subject to court approval, to assist in the sale of the  Property.  Prior to the Petition Date, Colliers International had the Property listed for sale at $1,040,000.00.

11.    The Trustee has accepted an offer for the Property in the amount of Nine Hundred Fifty Thousand and 00/100 ($950,000.00) pursuant to the Real Estate Purchase Contract attached hereto as Exhibit A.

12.     The Trustee has reviewed sales comparisons for similar properties in the Scottsdale, AZ market as well as a broker's price opinion and believes that the purchase price for the Property is fair and reasonable.

13.     The Trustee seeks approval for the payment of ordinary closing costs including transfer taxes, title insurance premium, prorated real property taxes and water bills etc.

14.     All valid liens, interests and encumbrances attaching to the Property will attach to the net proceeds from the sale of the Property to the same extent and priority as if the liens were attached to the Property.  The Trustee will not utilize the net proceeds from the sale without the consent of KeyBank or further order of this Court.

15.     The transfer of the Property will be "as is, where is" and free and clear of all liens, interests and encumbrances.

16.     The sale is subject to bankruptcy court approval and any better offers submitted to the Trustee up until the deadline to object to this sale. Better offers may be submitted to Kevin M. Smith, attorney for the bankruptcy estate by mail or email at ksmith@bbssplc.com. In the event that there are competing bidders, the Trustee will establish bidding procedures to obtain the highest purchase price.

17.     With the exception of funds on deposit at a financial institution, the Property is the only asset of the Debtor.

18.     In order to approve a sale of substantially all of the Debtor's assets outside the ordinary course of business pursuant to section 363(b), the court must find that the Debtor has articulated a sound business justification for the sale. *Stephens Indus., Inc. V. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986)*(citing Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2nd Cir. 1983)). "A sale of assets is appropriate if all provisions of §363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors." *See, Matter of Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) quoting *In re Charlesbank Laundry Co.*, 37 B.R. 20, 22 (Bankr. D. Mass. 1983). In the present case, the Trustee has set forth a legitimate reason for the sale as it will provide funds to the bankruptcy estate for the distribution to creditors if she is successful in the Adversary Proceeding. In addition, the prompt

3

sale will reduce administrative expenses associated with maintaining the Property including condominium dues, real property taxes and insurance.

19.     The Trustee believes that a sale of the Property is in the best interest of the estate and creditors.

20.     Trustee also seeks the approval of the Broker's commission.  Trustee has filed an application with this Court authorizing the employment of the Broker (DN 77).  The Broker's commission is 6% of the gross sales price.  Trustee seeks this Court's approval to pay the Broker's commission at closing, provided the Broker's employment has been approved by this Court.

21.     After the payment of all undisputed liens, closing costs, transfer taxes, tax prorations Broker's Commission and the like, the sale proceeds shall be held by the Trustee subject to a determination of the validity and extent of the attachment of the Deed of Trust to the Property and its proceeds.

**WHEREFORE**, the Trustee requests this Honorable Court enter the Order submitted herewith granting the Trustee authority to sell the Property for the sum of $950,000.00 or better terms, authorization to pay Broker's commission, outstanding real estate taxes, tax prorations, transfer taxes and normal closing costs charged the Seller, a waiver of the fourteen-day stay period set forth in Federal Rules of Bankruptcy Procedure, Rule 6004(h), and for such other and further relief this Court deems just and proper.

Respectfully submitted,

BEADLE SMITH, PLC

/S/ Kevin M. Smith
By: Kevin M. Smith (P48976)
Attorneys for Trustee
445 South Livernois, Suite 305
Rochester Hills, MI 48307-2577
(248) 650-6094, Ext. 15; (248) 650-6095 (fax)
Ksmith@bbssplc.com

Date:    November 19, 2019

EXHIBIT

*A*

## COMMERCIAL/INVESTMENT
## REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT

THE PRINTED PORTION OF THIS CONTRACT HAS BEEN APPROVED BY THE BUYER AND SELLER UPON EXECUTION. THIS CONTRACT IS INTENDED TO BE A BINDING CONTRACT. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OF ADEQUACY OF ANY PROVISION OR THE TAX CONSEQUENCES THEREOF. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.

1. RECEIVED FROM:   Browns Family Holdings, LLC and/or nominee _____, the sum of
2. ("Buyer"), taking title as:   To be determined during escrow
3. $  10,000.00 _____ by ( ) cash, (X) check, ( ) other  NA
4. (subject to collection), to be deposited promptly after Seller's acceptance of this Contract ( ) in Broker's trust account (X) with duly licensed
5. escrow agent: Chicago Title Stephanie Fife (480-675-4988) earnest deposit to be credited to the purchase price for the real property situated in
6. City  Scottsdalw _____, County  Maricopa _____, State  Arizona
7. described as: A commercial office bldg approximately 4,832+/-sq ft at: 16631 N 91st Street, Suite 101, Scottsdale, AZ 85260
8. N- NEC of Bahia Drive and 91st Street. Parcel Number: 217-13-301 to be verified during study period;
9. and the following personal property: See Item 28; and.  Building is sold on an: AS-IS WHERE-IS basis.
10. (collectively the "Premises") which Buyer hereby agrees to purchase.

11. BROKER (Firm Name)   Colliers International _____ by   Greg Hopley, Executive Vice President
12. $         $950,000.00 _____ Full Purchase Price, payable as follows:
13. $         $10,000.00 _____ Earnest deposit as indicated above and applicable to purchase price.
14. $         $940,000.00 _____ Additional cash at close of escrow.
15.
16. BUYER'S STUDY PERIOD: Buyer will have ten (10) days from the opening of escrow in order to review and
17. inspect the Property, records, reports and other information in the possession of the Seller to determine the feasibility of the
18. transaction. If, during this Study Period, the Buyer is not satisfied with its investigation, Buyer may cancel the escrow with
19. written notice to the Escrow Agent. In this event, Escrow Agent shall immediately refund Buyer's earnest money deposit and all
20. obligations hereunder shall be deemed terminated. If written notice of cancellation is not given by the Buyer to the Escrow Agent
21. on or before the end of this ten (10) day period, the Buyer's Study Period will be deemed to be satisfied and the earnest
22. money will become non-refundable. Buyer will hereby agree to close escrow ~~fifteen (30)~~ *thirty* days thereafter.
23. _____
24. _____
25. _____
26. Seller to provide all Leases, building costs, engineering and architectural plans, to Buyer, if any, during Buyer's Study Period.
27. Seller will provide an existing ALTA Survey and existing Phase I Environmental Study, if any, during Buyer's Study Period.
28. All building fixtures, desks, shelving, conference table, phone system, keys, etc, will hereby convey to Buyer at Close of Escrow.
29. ( ) Addendum Attached, which is incorporated herein by reference.
30-32. Deleted in its entirety.
33. Prorations and Costs. Insurance premiums and interest on assessments and encumbrances, if assumed, taxes, rents fees shall
34. be prorated as of close of escrow. Security, cleaning deposits, prepaid rents shall be transferred to the account of Buyer at close of escrow.
35. Seller and Buyer shall each pay one-half of the escrow fees.   All other closing costs shall be paid by Seller or Buyer in accordance with
36. local custom in the country where the Premises is located.
37. Special Assessments.  The amount of any special assessment which is a lien as of the effective date of this Contract shall be (X) paid in full
38. by Seller ( ) assumed by Buyer.
39. Closing Date. Seller and Buyer agree that they will comply with all the terms and conditions of this Contract and close of escrow on or
40. before fifteen days after Buyer's Study Period. If escrow fails to close by such date, this Contract is subject to cancellation as provided herein.
41. Possession.  Possession shall be delivered to Buyer at close of escrow.
42. Time for Acceptance.  This offer must be accepted by Seller on or before November 15, 2019.
43. Written notice of acceptance given to Broker shall be notice to Buyer.
44. Time of Essence.  Time is of the essence in this Contract.
45. Authority.  Each person signing this Contract warrants that he has the capacity, full power and authority to enter into and consummate the
46. transaction contemplated hereby on his own behalf or on behalf of the party he represents, as appropriate. This Contract inures to the
47. benefit of and is binding upon the parties and their beneficiaries, successors in interest and assignees.
48. Buyer Receipt of Copy.  THE UNDERSIGNED BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.
49. COMMISSIONS OR FEES PAYABLE FOR THE SALE, LEASE OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY
50. BOARD OF REALTORS, MULTIPLE LISTING SERVICE OR IN ANY MANNER OTHER THAN BETWEEN BROKER AND CLIENT.
51. Terms on Reverse.  The terms and conditions on the reverse side hereof are incorporated herein by reference.

52. _____  11-15-19    _____    Date
       Buyer                         Date        Buyer
53. _____  _____    _____    Date
       Buyer                         Date        Buyer

54. Address _____  _____  _____  _____
               Street                                  City          State        Zip

## ACCEPTANCE

55. The undersigned Seller (s) agrees to sell the Premises on the terms and conditions stated herein and agrees to pay the Broker (s) a fee of
56. Under separate letter agreement, paid to Colliers International at close of escrow.
57. Seller(s) irrevocably authorizes escrow agent to pay such fee (or one-half the deposit in case such deposit is forfeited by the Buyer, provided
58. such payments shall not exceed the full amount of the fee) to Broker(s) in cash at close of escrow, all in accordance with the signed listing

59. agreement, if any, previously entered into by Broker and Seller.    Nothing in this paragraph shall be construed as limiting applicable
60. provisions of law or any listing agreement relating to when commissions are earned or payable.    Broker need not advise Seller of any
61. subsequent offer received for the Premises until after forfeiture by Buyer or other nullification hereof.
62. Broker's fees shall be divided as follows: _____100%_____ to _____Colliers International - Greg Hopley, Executive Vice President.
63. *Attached Addendum Applies*
64. Seller Receipt of Copy. The undersigned acknowledges the receipt of a copy hereof and authorize Broker to deliver a signed copy to Buyer.

65. _____  11/12/19    _____
    Seller                          Date          Seller                          Date

66. _____            _____
    Seller                          Date          Seller                          Date

67. Address _____
            Street                                City              State              Zip

68. BROKER acknowledges by initialing below that he or his representative has notified Buyer of Seller's acceptance of this offer.

69. File No. _____    Date __November 12, 2019__    Broker's initials _____GH_____

70. **Entire Agreement.** This Contract, any attached exhibits and any addenda signed by the parties, shall constitute the entire agreement between
71. Seller and Buyer, and supersede any other written or oral agreements between Seller and Buyer. This Contract can be modified only in
72. writing and signed and approved by Seller and Buyer.

73. **Documents and Liens.** Seller shall provide to Buyer as soon as practicable copies of all unrecorded leases, restrictions, notes, licenses,
74. agreements, warranties, and permits affecting the Premises or the use or occupancy thereof, a list of all tenants, deposits, and rents and an
75. inventory of all furniture, furnishings, equipment and personal property which are to be transferred with the Premises, plus a description of
76. any liens or encumbrances thereon. Unless Buyer notifies Seller in writing of any objections to any item described in this paragraph within 10
77. days after receiving such item, such item shall be deemed to be acceptable to Buyer. Building is sold on an: AS-IS WHERE-IS basis.

78. **Evidence of Title.** Promptly after the execution of this Contract, Seller shall instruct a title insurance company to furnish to Buyer as soon as
79. practicable a preliminary title report together with complete and legible copies of all documents referred to in such preliminary title report.
80. Title to the Premises shall be conveyed by special warranty deed subject to the conditions of this Agreement and Seller shall furnish Buyer, at
81. Seller's expense, a Standard Owner's Title Insurance Policy issued by a title insurance company showing good and marketable title in Buyer,
82. free from defects and encumbrances except as follows: (1) rights and minerals reserved in patents or otherwise by any government entity;
83. (2) building use and other restrictive covenants of record; (3) water rights; (4) zoning regulations; (5) easements and rights-of-way for road-
84. ways, canals, laterals, ditches and public utilities; (6) taxes, paving and irrigation or other special assessments, not now delinquent (7) rights
85. of tenants in possession, if any; and (8) LIENS DESCRIBED IN THIS CONTRACT. If title to the Premises otherwise is defective at the time
86. set for close of escrow. Buyer may elect to accept title subject to defects which are not cured or Buyer may elect to cancel this Contract, where
87. upon all money paid by Buyer pursuant to this Contract shall be returned to the Buyer. Building is sold on an: AS-IS WHERE-IS basis.

88. **Documents and Escrow.**
89. A. If Seller and Buyer elect to execute escrow instructions to fulfill the terms hereof, they shall deliver the same to escrow agent within 10
90. days of the acceptance of this offer.

91. B. All documents necessary to close escrow shall be deposited in escrow with the escrow agent. Seller and Buyer further agree to execute all
92. documents including, but not limited to, agreements for sale, notes, mortgages, deeds of trust and deeds, necessary to close this transaction,
93. in the standard form used by escrow agent.

94. C. If there is a conflict between the provisions of this Contract and any escrow instructions executed pursuant hereto, the provisions of this
95. Contract shall be controlling.

96. **Defaults and Remedies.** If Buyer fails to pay the balance of the cash purchase price when due, or otherwise defaults in any respect on any
97. material obligation under this Contract, Seller may elect to be released from the obligation to sell the Premises to Buyer, Seller may proceed
98. against Buyer upon any claim or remedy which he may have, in law or equity, or because it would be difficult to fix actual damages in case of
99. Buyer's default, the amount of the earnest money deposit may be deemed a reasonable estimate of the damages, and the Seller may, at his
100. option, retain the earnest money deposit as his sole right to damages. If Buyer or Seller files suit against the other to enforce any provision of
101. this Contract or for damages sustained by reason of its breach, all parties prevailing in such action, on trial and appeal, shall receive their
102. reasonable attorneys' fees and costs, as awarded by the court. In addition, both Seller and Buyer agree to indemnify and hold harmless
103. Broker(s) and escrow agent against all costs, damages, attorneys' fee, expenses or liabilities Broker(s) or escrow agent may incur or sustain
104. in connection with any lawsuit arising from this Contract and will pay the same on demand, unless the court shall grant judgment in such
105. action against the party to be indemnified. Seller, at his best ability, to will obtain and provide estoppel certificates from each Tenant during
Buyers study period.

106. **Warranties.** Except as otherwise provide in this Contract, Seller shall maintain and repair the Premises so that, at the time possession is
107. transferred to Buyer, the Premises shall be in substantially the same condition and repair as when offered for sale. Seller warrants that the
108. heating, cooling, roof, plumbing and electrical systems, and the built-in equipment will be in working condition at close of escrow or upon
109. possession, whichever is sooner. Until the closing, Seller shall grant Buyer or Buyer's representative reasonable access to enter and inspect
110. the Premises. By closing hereunder, Buyer acknowledges that all warranties concerning the Premises have been satisfied and extinguished.
111. Broker(s) is hereby relieved of any and all liability and responsibility regarding matters specified in this paragraph. Building is sold on an:
AS-IS WHERE-IS basis.

112. **Status of Warranties and Representations.** Any representations or information concerning, without limitation, the Premises or title,
113. physical condition, value, rent rolls, notice of violations, or other material matters relating to the Premises given to Buyer or Broker(s) are
114. believed to be reliable but were provided by others, and therefore, Broker(s) makes no warranty, express or implied, as to the accuracy of
115. such information. Neither the Broker nor the Seller makes any representations or warranties concerning rights to, adequacy of or quality of
116. water supply or water rights with respect to the Premises. Buyer represents by signing this Contract that he has (or will have prior to the
117. closing hereunder) conducted an independent investigation of any and all matters concerning this purchase, and by closing hereunder accepts
118. the Premises, its fixtures and improvements, and personal property transferred in this transaction and any rentals or business conducted
119. thereon AS IS, AND NO SELLER WARRANTY of any kind, express or implied (including, without limitation, WARRANTY OF
120. MERCHANTABILITY or habitability) shall survive the closing. Seller and Buyer hereby release Broker(s) from all responsibility and
121. liability regarding the condition or valuation of the Premises and neither Seller, Buyer nor Broker(s) shall be bound by any understanding,
122. agreement, promise or representation, express or implied, not specified herein. Building is sold on an: AS-IS WHERE-IS basis.

123. **Risk of Loss.** If there is any loss or damage to the Premises between the date hereof and the date of closing, by reason of fire, vandalism,
124. flood, earthquake or act of God, the risk of loss shall be on the Seller, provided, however, that if the cost of repairing such loss or damage



125. would exceed 10 percent of the purchase price, (a) Buyer may elect to cancel this Contract unless Seller agrees in writing to pay the cost of
126. repairing all such loss or damage, and (b) Seller may elect to cancel this Contract unless Buyer agrees in writing to pay the cost of repairing
127. such loss or damage to the extent such cost would exceed 10 percent of the purchase price.

128. **Deposit Acceptance.** The deposit described in Line 3 of this Contract is accepted by Broker subject to prior sale and subject to acceptance
129. by Seller and deposited with the Title Company.

130. **Broker's Attorneys' Fees.** If Broker reasonably hires an attorney to enforce the collection of the commission payable pursuant to this
131. Contract, and is successful in collecting some or all of such commission, Seller agrees to pay Broker's reasonable attorneys' fees and costs as
132. awarded by the Court.



## BANKRUPTCY ADDENDUM

This Bankruptcy Addendum (the "**Addendum**") is issued by Kevin M. Smith on behalf of Kelly M. Hagan, Chapter 11 Bankruptcy Trustee for the Bankruptcy Estate of NJ Realty, LLC ("**Seller**"), to Browns Family Holdings, LLC, and/or nominee ("**Buyer**"). This Bankruptcy Addendum modifies the terms of that certain Commercial/Investment Real Estate Purchase contract and Receipt for Deposit dated November 8, 2019 (the "**Offer**"), by Buyer, concerning the property commonly known as 16631 North 91st Street, Suite 101, Scottsdale, Arizona 85260 (the "**Premises**" or "**Property**"). This Bankruptcy Addendum hereby supersedes any conflicting provisions contained in the Offer. Each capitalized, but undefined, term used in this Addendum shall have the same meaning as is set forth in the Offer.

1.   **Subject to Higher and Better Bids:** The sale of the Property is subject to approval by the United States Bankruptcy Court for the Western District of Michigan and better offers received by the Trustee prior to Court approval of the subject offer. Up until obtaining Bankruptcy Court approval, higher and better bids will be accepted by the Court with the possible result of voiding this contract. Both the Bankruptcy Court and Trustee have discretion in determining what constitutes a "better" bid. If the Trustee receives a better bid, Trustee will notify the Buyer of the better bid and Buyer shall have 48 hours to submit a bid which would be considered a better bid than the previous bid.

2.   **Status on MLS:** Buyer is aware that the Property shall remain in active status on the Arizona Multi Listing Service until the court hearing is held. However, the public remarks shall be modified to inform prospective buyers and agents of the existence of an offer in escrow.

3.   **As Is/ Where Is Sale:** Buyer accepts the Property in an "As Is, Where Is" condition, as of the date of Close of Escrow, as defined in the Contract, including any hidden defects, known or unknown, (including environmental) affecting the Property, and whether or not such defects or conditions were discoverable through inspection. Buyers acknowledges that neither Seller nor its agents have made any warranties, express or implied, relating to the condition of the Property. Seller and its agents shall not be responsible for the repair, replacement or modification of any deficiencies, malfunctions or defects in the land or any structures located on the Property. Buyer additionally agrees that Seller shall have no liability for any claim or loss that Buyer or Buyer's successors and/or assigns may incur as a result of any condition or other defect which may now or hereafter exist, with respect to the Property.

4.   **Study Period:** Buyer hereby acknowledge that it is Buyer's sole responsibility to obtain inspection reports for the Property, by qualified professionals, and to determine the presence of any toxic or hazardous substances on the Property which would make it uninhabitable or dangerous to the health of the occupants, or other factors regarding the Property, about which Buyer may be concerned. No inspections may be made without prior notice to Seller. In the event the inspection reveals material deficiencies, Buyer may cancel the Contract within the Study Period, and receive a return of its Earnest Deposit. To cancel, Buyer must, within the Study Period, provide Seller with written

Buyer   **Buyer**

Page 1 of 4

Seller **Seller**

notice of cancellation, together with the inspection reports and a written designation of the deficiencies.

5.      **Assignee/Nominee**: Notwithstanding anything contained herein to the contrary, Buyer may assign the contract to any buyer/nominee owned fifty-one percent (51%) or more by the Buyer named in this Addendum and in line 1 of the Purchase Contract, or by the managers or members of such named Buyer.

6.      **Closing**: The close of escrow shall occur not later than the earlier of (a) fourteen (14) business days plus three (3) days for mailing after the United States Bankruptcy Court for the Western District of Michigan has entered an order approving the Contract, or (b) January 15, 2020. If the Escrow fails to close on or before January 15, 2020, the Contract shall be null and void and the Escrow shall automatically terminate unless on or prior to January 15, 2020, Buyer and Seller enter into a written amendment to the Contract extending the close of escrow to a date acceptable to the parties. Except as provided in the preceding sentence, no extensions shall be granted.

7.      **Conveyance**: Notwithstanding anything herein to the contrary, Seller shall convey the Property to Buyer by Trustee's Deed.

8.      **Property Owners Association**: The Property may be governed by a Property Owners Association. Buyer acknowledges and recognizes that the Seller is a bankruptcy trustee and, thus, lacks personal knowledge of the fees associated with the association. Buyer shall be responsible for all fees, including, but not limited to, transfer fees, regular and special assessments, and reserve contributions, due the association at close of escrow. Seller shall be responsible for any association disclosure fee. Any current assessments which are a lien as of the close of escrow shall be paid by Seller and prorated as of the close of escrow. Buyer shall be solely responsible for verifying all association fees and information.

9.      **Amendments to Offer**:

Line 17 is amended to delete the remainder of the sentence following the word "Property".

The following is added at the end of Line 27, and after the sentence ending on Line 76:

> "Any documents and materials provided to Buyer are provided without representation and warranty by Seller on the express condition that Buyer undertakes its own analysis and investigation of the materials provided."

Line 28 is specifically amended by adding the following:

> "Nothing herein contained shall be deemed a representation by Seller that all or any of the items listed in line 28 herein exist or are a part of the Property. Such items shall be conveyed by quitclaim bill of sale and no portion of the Purchase Price shall be allocated to such items."

Lines 57-61, inclusive, are deleted.

Buyer  Buyer

Seller Seller

The phrase "within 10 days after receiving such item" are deleted from lines 76-77 and replaced with the following "on or prior to expiration of the Study Period".

Lines 89-90 are deleted and the following are substituted in place thereof:

> "This Contract shall serve as escrow instructions.  The parties shall execute any additional escrow instructions required by escrow agent, with such escrow instructions to be in form and substance satisfactory to Buyer and Seller."

The remainder of Line 102 beginning with the words "In addition", and Lines 103-105 are deleted in their entirety, and replaced with:

> "Notwithstanding anything to the contrary set forth herein, in the event of a default by Seller, Buyer's sole remedy shall be to pursue specific performance of this Contract within sixty (60) days after the occurrence of such default.  Seller shall not be in default if Seller fails to obtain bankruptcy court approval."

Lines 106-111 are hereby deleted and replaced with:

> "Condition of Premises: Seller makes no warranty to Buyer, either express or implied, as to the condition, zoning, or fitness for any particular use or purpose of the Premises, or the operating systems included therein. Buyer is advised to conduct independent inspections and investigations regarding the Premises within the Study Period. Seller shall make the Premises available for all inspections and walkthrough(s) upon reasonable notice by Buyer."

10.  **United States Bankruptcy Court for the Western District of Michigan Jurisdiction:**    This Contract is subject to the jurisdiction of the United States Bankruptcy Court for the Western District of Michigan. This Contract is entered into, and relates to, real property situated in Maricopa County, Arizona. The Contract shall be governed by and constructed in accordance with the laws of the State of Arizona. Buyer and Seller irrevocably submit to the jurisdiction of the United States Bankruptcy Court for the Western District of Michigan and irrevocably agree that any and all claims relating to this contract shall be brought in connection with the United States Bankruptcy Court for the Western District of Michigan.

11.    **Communication:**  All communications or notices required or permitted to be given or served under this Contract shall be in writing and shall be deemed to have been duly given or made if: (a) delivered in person or by courier (e.g. Federal Express), (b) deposited in the United States mail, postage prepaid, or mailing by certified mail, return receipt requested, or (c) sent via facsimile and addressed to the intended recipient at the address and/or the facsimile number set forth below such party's signature at the end of this Contract. All communications and notices shall be effective upon delivery in person or by courier, upon being deposited in the United States mail or being sent by facsimile, if sent by facsimile during normal business hours, as the case may be. Any party may change his or her address and/or facsimile number by giving

Buyer  Buyer

Page 3 of 4

Seller  Seller

notice in writing, stating his or her new address and/or facsimile number, to all of the other parties in the foregoing manner. Copies of all notices shall be delivered to the Escrow Agent.

All payments shall be in United States currency and in immediately available funds (wire transfer or cashier's check). The parties shall execute and deliver any additional documents required under the Contract or necessary to complete the Contract as provided herein, both prior to and following Closing. Possession and risk of loss in connection with the Property shall be transferred by Seller at Closing.

**Seller:**

Kevin M. Smith on behalf of Kelly M. Hagan,
Chapter 11 Bankruptcy Trustee for the Bankruptcy
Estate of NJ Realty, LLC

By: _____

Dated: ____10/13/19_____

**Acceptance by Buyer:**

**Buyer:**

Brown Family Holdings, LLC

By: _____

Dated: ____11-13-19_____

Buyer  Buyer                        Page 4 of 4                        Seller Seller